Good afternoon, Judge Persaud, and good afternoon, Judge Owens, and Judge Hartley. Many skilled people can argue in your case with multiple types. In short, you must believe that the case has been deeply flawed in this case because the evidence that you say is the evidence is not evidence. Most important in our case is the evidence. You must believe that if you stop getting by the court, it stops. It overcomes. It stops. It perpetuates. It happens. In short, the evidence in this case was thoroughly flawed to our argument. It was flawed to our argument. Mr. O'Gillis was served an officer best. There was no fault of his. There was no fault of his. He was a successful counter-apportionment officer for which he agreed. Mr. Gillis had a right to a position. I can hear you. Mr. O'Gillis was the sole suspect testifying against Mr. Gillis. Mr. Gillis was his fan. Mr. Gillis was his fan. Mr. Gillis was his fan. But in this case, Mr. O'Gillis was the official. There was no contender. There was no contender. There was no contender. In this case, the whole issue was he never saw him as a suspect or a copy. What we feel is most important to the criminal court is that the testifying agents are concerned with the fact of evidence and the criminal history evidence that we have. The drug evidence he needed to get a tool that only applied to incendiary mechanics but then that time he was caught and still had it. He was caught and still had it. The criminal history is simply a work in progress. It is time for you to part ways from the argument he was, which is somewhat understandable, and maybe a little too dangerous. You can see that the criminal history involves an approach that I've seen before. But the trial gets done, and both of them work together. Mr. O'Gillis, I understand that in the case of my application, my case was introduced here. Yes, and the reason is that in this part of my argument, it feels the most important is the case evidence. Okay. Now, with regards to the criminal history evidence, the drug evidence, the incendiary evidence, are you agreeing that if they're all there, that they're all there? That's from the incendiary evidence to the mandatory evidence? Well, I'm agreeing in terms of criminal history. I don't think it applies only for incarceration of arms that truly represent the victim's history. Not only for the evidence, but how often do you see your son, his wife, in time of harm? That's where it's, you know, I think the contradiction is that drugs are not relevant in this case only to the victim of negligence, but it's the same for his wife. The game is where we really have trouble. That's what we believe, and the hope we have here is that it's all in one way, because it's conceded that the officer knew nothing about this, and so you didn't know whether he had any kids. One question is, to justify the thoughts of how this is relevant to negligence. We really don't see it. And if this is a remodelment to the loss of a son because of a past or present case of negligence, we believe the contradiction of that evidence is so substantial. It is to do with drugs. What do we do? What do we do with drugs? We lost a member of the community, and we didn't even want to listen to any of that. It's the rest of the evidence. But what the evidence ended up being, as we pointed out earlier, starting with open statements, talking about stabbings, shootings, guns, drive-bys, 12-year-olds shot and killed, a huge number of crimes, deaths, injuries. No, that's not what we're talking about. That's probably okay, because what we do, to some extent, we can understand under the 1880s analysis. But then these people tell us about gay pictures, gay tattoos, gay signs, false examinations of public positions for a number of years, and then all of a sudden you expect a sex-reviewed parole, who testified he was gay after a reported book on gay violence or an article talking about assaults, drugs, gun violations, drugs, narcotics, all being gay activities, and so it refers to a 12-year-old being shot and killed by a gay man. That got worse. Deaths and violence weren't going to be the answer. We didn't see any reasons for how gay it was. We know that mental health and social health issues, they haven't improved at all just in the 1980s and 80s. And it keeps us involved in those folks who testified about gay abilities in medical settings, such as men's safety, and about gay activities in the laboratory, such as preschool. But what started us to find, although I repeatedly attempted in all the years, in just several of the years that we had prior arrests with the deceased, the deceased was a gay member, talked about his issues, his family's three gays in general, his psyche, and his existence. And that this gang was involved in the sales and clobbering of firearms and drugs, including a rap pedigree. It was a high fraud rate, a lot of gay activity. Now, we don't know if there were any cases in the gay trafficking organizations that advised the nation. And this is where we'll get to that. He testified in persistent violence. Self-homologous, and fraudulent against law enforcement. Again, all of our interests. Using weapons, and using weapons, discrediting, for them, gay members. I see, but I'm not hearing it at all. I'm looking at the case. I'm curious. I mean, it seems like there is, you know, sweat, sweat, and grays. And most of this, I guess, actually goes to liability, because it goes to the question of why, essentially, why was any officer who would be to, you know, I understand your explanation as to why was that, and how does it come to play when he was starting these conversations? It's not that he wants to testify. He doesn't have the information to testify what the facts, but to put on four or five different witnesses, two or three different experts, to talk about the specific activities of this gang. And I think, primarily, the fact that he doesn't have the information to testify is because he wants to do it. Of course. So, once, you know, he confronts her, which is a woman, the judge, once this expert is talking about making these weapons for criminal or violent behavior, and he responds to that by calling some police officers, and specifically, they want by-laws to be used against police officers. And I have to say, in some of the records from the time, it's hard not to resist the fact, so much of this evidence, that no one in any structure is going to be able to cure that, with each group we have present. So, if there's a group of witnesses, it's just too tough. If it was only the officers saying what this college was, we probably wouldn't be here on this court. But five separate witnesses, two gang experts, or the press that only comes in for evidence, and what Bella Mac knows. So, that's our position there. So, I think it's important, because we can't topple here. So, my opinion, on the evidence in the trial, it was, well, we resisted saying, you know, our argument would be, you know, even if the student didn't seem conscious, that she was probably doing it, it wasn't the idealistic case. There was, the little gray case, I guess, was the name to file, so, Margie, I agree with what you're suggesting. That's correct, Your Honor. So, the old case, you can't, the judge was going to let it in, because he felt somehow, related to damages, being limited, and he said, so, you have to prepare files, to qualify, on evidence, on damages, and this case, the damages caused in the trial, would have been applicable. So, you have to, surely, at least, consider the fourth amendment, I think, raise the note, to the office, at the time, and then, all the other employees, and the lawyers, and the evidence, and the office, and all the sentences. Your Honor, I understand your concerns, Your Honor. I understand everybody's concerns, Your Honor. I understand your concerns, Your Honor. So, Your Honor, I'd better reserve, because we have, some serious problems, not, including the appeal, but, the fact that, the case is, possibly, under 922, that was number 19, and there was, just a, only as
judges: Berzon, Owens, Marbley